**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **REGINALD JOHNSON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-548** |
| **CBA HOMEBUILDERS, LLC, ET AL.** | **SECTION: "G"(5)** |

**ORDER AND REASONS**

In this litigation, Plaintiffs Reginald Johnson and Anyiesa Johnson (collectively, "Plaintiffs") bring a claim for breach of contract against Defendants CBA Home Builders, Inc. and Lionel Nelson (collectively, "Defendants").[1] Before the Court is Plaintiffs Reginald Johnson and Anyiesa Johnson's ("Plaintiffs") Motion for Default Judgment.[2] On January 23, 2026, the Court denied Plaintiff's first Motion for Default Judgment without prejudice.[3] Plaintiffs have now filed a renewed Motion for Default Judgment against CBA Home Builders, Inc. and Lionel Nelson.[4] Having reviewed the motion, the memorandum in support, the record, and the applicable law, the Court will grant in part, as to CBA Home Builders, and deny the motion in part as to Lionel Nelson. The request for attorneys' fees is deferred pending further briefing on that issue.

---

[1] Rec. Doc. 23. Plaintiffs originally named Dramatic Homes and Kewa Short as additional defendants. However, Plaintiffs voluntarily dismissed those claims on April 2, 2026. Rec. Doc. 28. Plaintiffs also originally named CBA Homebuilders, LLC. On January 2, 2026, Plaintiffs amended the Complaint to correct the entity's name to CBA Home Builders, Inc. Rec. Doc. 23.

[2] Rec. Doc. 31.

[3] Rec. Doc. 25.

[4] Rec. Doc. 31.

## I. Background

### *A. Factual Background*

On March 1, 2024, Plaintiffs entered into a building agreement with Defendant CBA Home Builders, Inc. for the construction of a residence.[5] The total cost to build the residence was $650,000.[6] On June 8, 2024, Plaintiffs executed a change order to remove and replace buried foundation at the residence, subsequently increasing the contractual price by $7,900 and extending the date of completion of the residence.[7] On June 12, 2024, Plaintiffs executed a second change order to add an elevator to the residence, extending the date of completion to February 15, 2025.[8] According to the Amended Complaint, Plaintiffs paid an additional $34,000 to purchase the elevator, to have the elevator reframed, installed and completed.[9] The Amended Complaint states Defendants failed to provide regular updates regarding the progress of the residence, and refrained from working for months at a time on the construction of the residence.[10]

On December 9, 2024, Plaintiffs entered a third change order, paying an additional $8,900 to purchase and install a generator.[11] On February 4, 2025, Plaintiffs contend Defendants failed to

---

[5] Rec. Doc. 23 at 2.

[6] Rec. Doc. 1-1.

[7] Rec. Doc. 23 at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

respond to an inquiry regarding an update on status of construction of residence.[12] The Amended Complaint alleges that Plaintiffs and Defendant Lionel Nelson ("Nelson") agreed to meet at the residence on February 10, 2025, but Nelson failed to appear or respond to several calls and texts from Plaintiffs.[13] The Amended Complaint explains that Nelson responded to Plaintiffs' inquiries regarding construction of the residence two days later, stating that his failure to respond and absence was due to his incarceration.[14] Plaintiffs allege Nelson informed them that the incarceration stemmed from a traffic stop due to suspension of license for failure to pay state income taxes.[15] During the period that Nelson was unresponsive, Plaintiffs allege they discovered that the windows were not installed because Nelson failed to purchase the windows.[16] Plaintiffs further contend that Nelson's deposit check bounced, and Nelson failed to return phone calls from the window vendor.[17] Plaintiffs allege Nelson falsely stated the floor tile was being ordered for construction of the residence.[18] According to the Complaint, Plaintiffs personally purchased windows and tile to be installed because Nelson did not pay for the materials.[19]

On February 6, 2025, Plaintiffs inquired about an updated timeline and status regarding the remaining work to be completed at the residence, including copies of paid invoices for the elevator

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

and generator.[20] Plaintiffs contend Defendants failed to provide the updated timeline, status of work, or invoices for the elevator and generator.[21] After repeated failures to meet with Defendants to provide requested information regarding inability to complete construction of the residence, Plaintiffs retained counsel.[22]

On February 12, 2025, Plaintiffs sent Defendants a termination letter for breach of contract via text message and e-mail.[23] Plaintiffs assert the contract provided that if an action is brought for breach of contract, the prevailing party would be entitled to damages, including attorney's fees and costs.[24] On February 18, 2025, Plaintiffs allege they learned that Defendants failed to have all inspections completed prior to closing of walls with insulation and sheetrock at the residence.[25] The Complaint states that Plaintiffs hired a new contractor, and expended additional time, effort and costs to resolve the inspection issue.[26]

***B. Procedural Background***

On March 20, 2025, Plaintiffs filed a Complaint in this Court against CBA Homebuilders, LLC, Lionel Nelson, Dramatic Homes, and Kewa Short, asserting a claim for breach of contract.[27] On June 3, 2025, Defendants CBA Homebuilders, LLC, Lionel Nelson, Kewa Short, and Dramatic

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 5.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] Rec. Doc. 1.

Homes were served with the Complaint.[28] On July 11, 2025, Plaintiffs filed Motions for Entry of Default against Defendants CBA Homebuilders, LLC, Lionel Nelson, Kewa Short, and Dramatic Homes.[29] On July 15, 2025, the Clerk of Court granted Plaintiff's Motions for Entry of Default.[30] On December 2, 2025, Plaintiffs filed the first Motion for Default Judgment, seeking default judgment against Nelson only.[31]

On December 30, 2025, Plaintiffs filed a Motion for Leave of Court to File an Amended Complaint to substitute CBA Homebuilders, LLC, with CBA Home Builders, Inc.[32] On January 2, 2026, this Court granted Plaintiff's Motion for Leave to File an Amended Complaint.[33] On February 3, 2026, Defendant CBA Home Builders, Inc. was served with the Amended Complaint.[34]

On January 23, 2026, this Court denied Plaintiffs' first Motion for Default Judgment, concluding that default judgment should not be entered against Nelson only because the named defendants were allegedly jointly liable.[35] On March 30, 2026, Plaintiffs filed a Motion to Dismiss

---

[28] Rec. Docs. 10, 11, 12.

[29] Rec. Docs. 14, 15, 16, 17.

[30] Rec. Doc. 18.

[31] Rec. Doc. 19.

[32] Rec. Doc. 20.

[33] Rec. Doc. 22.

[34] Rec. Doc. 26.

[35] Rec. Doc. 25.

Defendants Kewa Short and Dramatic Homes without prejudice.[36] On April 2, 2026, this Court granted Plaintiff's Motion, dismissing Kewa Short and Dramatic Homes.[37]

On April 7, 2026, Plaintiffs filed a Motion for Entry of Default as to Defendant CBA Home Builders, Inc.[38] On April 8, 2026, the Clerk of Court granted Plaintiff's Motion for Entry Default.[39] On April 27, 2026, Plaintiffs filed the instant Motion for Default Judgment, seeking default judgment against Defendants CBA Home Builders, Inc. and Nelson.[40] To date, none of the named defendants have made an appearance or responded to the instant motion.

## II. Plaintiff's Arguments

In the instant Motion for Default Judgment, Plaintiffs argue that the unchallenged Complaint establishes a viable claim to relief.[41] Plaintiffs contend that they are entitled to default judgment on their breach of contract claim.[42] Plaintiffs explain that under the Building Agreement, Plaintiffs agreed to tender $650,000 to Defendant CBA Home Builders, Inc. for construction of the residence.[43] Plaintiffs contend that Defendants failed to complete construction of the residence within the time agreed upon, and Defendants failed to provide updates to Plaintiffs regarding

---

[36] Rec. Doc. 27.

[37] Rec. Doc. 28.

[38] Rec. Doc. 29.

[39] Rec. Doc. 30.

[40] Rec. Doc. 31.

[41] *Id.*

[42] Rec. Doc. 31-1 at 4.

[43] Rec. Doc. 1-1.

progress of the construction of the residence.[44] Plaintiffs further argue that they are entitled to recover damages in the amount of $217,587.17 for breach of contract, costs, including reasonable attorney's fees, pursuant to Paragraph 24 in the contract.[45]

## III. Law and Analysis

### *A. Legal Standard on a Motion for Default Judgment*

As the Fifth Circuit has explained, Federal Rule of Civil Procedure 55 establishes three steps for obtaining a default judgment: (1) default; (2) entry of default; and (3) default judgment.[46] A default occurs when "a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules."[47] The clerk will then enter an entry of default "when the default is established by affidavit or otherwise."[48] After the clerk's entry of default, a "plaintiff may apply for a judgment based on such default. This is a *default judgment*."[49] Before granting a motion for default judgment, this Court "has the duty to assure that it has the power to enter a valid default judgment," and must "look into its jurisdiction both over the subject matter and the parties."[50] The Fifth Circuit has held that "[a] judgment entered without personal jurisdiction is void."[51]

---

[44] Rec. Doc. 23 at 5.

[45] Rec. Doc. 31.

[46] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

[47] *Id.*

[48] *Id.*

[49] *Id.* (emphasis in original).

[50] *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

[51] *Id.*

The Fifth Circuit emphasizes that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."[52] "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[53] In cases over which the Court has subject matter jurisdiction and personal jurisdiction over the parties, the Court may only issue a default judgment when circumstances support doing so. If the procedural prerequisites for default are met, the Court must then decide whether the plaintiff's requests for relief are appropriate.[54] The Court considers the following factors in deciding a motion for default judgment:

> [1] whether material issues of fact are at issue,
>
> [2] whether there has been substantial prejudice,
>
> [3] whether the grounds for default are clearly established,
>
> [4] whether the default was caused by a good faith mistake or excusable neglect,
>
> [5] the harshness of a default judgment, and
>
> [6] whether the court would think itself obliged to set aside the default on the defendant's motion.[55]

On a motion for default judgment, the Court accepts as true the plaintiff's allegations of fact but remains obligated to determine whether those allegations state a claim for relief.[56] The

---

[52] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

[53] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

[54] *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d. 784, 796 (E.D. La. 2013) (Brown, J.) (citations omitted).

[55] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[56] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

pleadings must provide a sufficient basis to support the entry of a default judgment.[57] When a party seeks a default judgment for damages, the Fifth Circuit instructs that "damages should not [be] awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts."[58] However, "where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary."[59]

### *B. Jurisdiction to Enter a Default Judgment*

As a preliminary matter, the Court first considers whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendants.

#### 1. Subject matter jurisdiction

Plaintiffs allege in the Amended Complaint that subject matter jurisdiction is proper in this Court, based on 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs and the action is between citizens of different states.[60] The Amended Complaint states that Plaintiffs Reginald Johnson and Anyiesa Johnson are individual persons domiciled in the state of Texas.[61] As such, Plaintiffs are citizens of Texas.

The Amended Complaint states that Defendant CBA Home Builders, Inc. is a corporation incorporated in the State of Louisiana, with its principal place of business in New Orleans,

---

[57] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citations omitted).

[58] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

[59] *Fagan*, 957 F. Supp. 2d at 802 (quoting *Columbia Pictures Indus., Inc. v. Whitting*, No. 06–133, 2006 WL 1851388, at *1 (W.D. Tex. June 1, 2006)).

[60] Rec. Doc. 23 at 2.

[61] Rec. Doc. 23 at 1.

Louisiana.[62] Further, the Amended Complaint explains that Defendant Nelson is an individual residing in Louisiana. Accordingly, Defendants CBA Homes Builders, Inc., and Nelson are citizens of Louisiana.[63]

Based on the record, there is complete diversity amongst the parties. Further, the amount in controversy exceeds $75,000.[64] As such, the Court finds that it has subject matter jurisdiction over Plaintiffs' claims against Defendants.

**2. Personal jurisdiction**

Next, the Court must determine whether it has personal jurisdiction over Defendants. The Amended Complaint states that CBA Home Builders, Inc. is a corporation incorporated in Louisiana with their principal place of business in Louisiana.[65] The Amended Complaint further explains that Nelson is an individual domiciled in Louisiana.[66] The Fifth Circuit has explained that the paradigm forum for the exercise of general jurisdiction for an individual is their domicile.[67] The Fifth Circuit has further explained that a corporation's "home" is the state of its incorporation, and the state where it has its principal place of business.[68] Thus, Defendants are subject to general personal jurisdiction in Louisiana. Accordingly, the Court finds that it has personal jurisdiction over Defendants.

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 23 at 1–2.

[66] *Id.* at 1.

[67] *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011).

[68] *Pace v. Cirrus Design Corp.,* 93 F.4th 879 (5th Cir. 2024).

### 3. Service of Process

In order for a federal court to exercise personal jurisdiction over a defendant, "the procedural requirement of service of summons must be satisfied."[69] Consequently, absent proper service, the court lacks personal jurisdiction over the defendant, and any default judgment entered against the defendant is void.[70]

Proper service of process must occur in accordance with Federal Rule of Civil Procedure 4. With respect to serving individuals within a judicial district of the United States, Rule(e)(2)(A) authorizes service by, "delivering a copy of the summons and the complaint to the individual personally." With respect to serving corporations, partnerships, or associations within a judicial district of the United States, Rule 4(h) authorizes service:

(1) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(2) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Rule 4(e)(1) provides for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

---

[69] *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Miss. Publ'g Corp. v. Murphee*, 326 U.S. 438, 444–45 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.")).

[70] *See Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999) ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void . . . ."); *Omni*, 484 U.S. at 104.

Here, the record indicates CBA Home Builders, Inc. was personally served with the Amended Complaint on February 3, 2026, through its registered agent, Lionel Nelson.[71] Under Louisiana Code of Civil Procedure Article 1261, "Service of citation or other process on a domestic or foreign corporation is made by personal service on any one of its agents for service of process."[72] Therefore, service of CBA Home Builders, Inc. was proper.

The record does not reflect that Nelson was served with the Amended Complaint. However, Nelson was previously personally served with the Original Complaint,[73] and the Clerk entered default against him after he failed to appear.[74] The Amended Complaint did not assert any new claims for relief or additional allegations against Nelson. Accordingly, pursuant to Federal Rule of Civil Procedure 5(a)(2), Plaintiffs were not required to serve Nelson with the Amended Complaint.[75] Accordingly, the Court finds that service of process was proper.

### *C. Entry of Judgment*

#### 1. Whether Default Judgment is Appropriate

The Court must next decide whether Plaintiffs' request for entry of default judgment is appropriate.[76] The Court considers the following factors when determining whether to grant a default judgment:

---

[71] Rec. Doc. 26 at 2.

[72] La. Code Civ. P. art. 1261.

[73] Rec. Doc. 10.

[74] Rec. Doc. 18.

[75] *See* Fed. R. Civ. Pro. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.").

[76] *Fagan,* 957 F. Supp. 2d at 796 (citations omitted).

[1] whether material issues of fact are at issue,

[2] whether there has been substantial prejudice,

[3] the harshness of a default judgment, and

[4] whether the court would think itself obliged to set aside the default on the

[5] the harshness of a default judgment, and

[6] whether the court would think itself obliged to set aside the default on the defendant's motion.[77]

As for the first factor, when a party fails to respond to a complaint, as Defendants have done here, it also fails to place any material facts in dispute, and is barred from contesting on appeal the facts as established by the participating party's pleadings.[78] Turning to the second factor, Defendants' failure to respond to the complaint in this matter has substantially prejudiced Plaintiffs' interest in resolving its claims against Defendants.[79] Third, the grounds for default are clearly established. The record indicates that Defendant Lionel Nelson was served with the Original Complaint on June 3, 2025.[80] The record further indicates that Defendant CBA Home Builders, Inc., was served with the Amended Complaint on February 3, 2026 through its registered agent Lionel Nelson.[81] The Clerk of Court issued an entry of default against Nelson on July 15,

---

[77] *Lindsey*, 161 F.3d at 893.

[78] *Fagan*, 957 F.Supp.2d at 797 (citing *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[79] *See id.*

[80] Rec. Doc. 10.

[81] Rec. Doc. 26.

2025, and against CBA Home Builders, Inc. April 8, 2026.[82] Despite proper service, Defendants have not appeared to answer this matter or challenge the entry of default against them. Fourth, since Defendants have not participated in this matter, they have not offered any evidence to show that their failure to appear was the product of good faith mistake or excusable neglect. As for the fifth factor, entry of a default judgment would not be overly harsh, because, as discussed *infra*, Plaintiffs are seeking a reasonable sum of money for breach of the agreement. Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default judgement if challenged by Defendants. Accordingly, the Court finds that the six factors weigh in favor of entering a default judgment.

Next, the Court must determine whether, taking all of Plaintiffs' well-pleaded facts as true, Plaintiffs has adequately demonstrated that they are entitled to a default judgment on the claims.[83]

**2. Plaintiffs' Claim Against Defendants**

Plaintiffs assert a claim against Defendants for breach of contract. Plaintiffs allege that Defendants breached the Building Agreement by failing to complete the construction of the residence within the time provided. The Amended Complaint states on March 1, 2024, Plaintiffs entered into a Building Agreement with Defendant CBA Home Builders, Inc. for the construction of a residence.[84] The total cost to build the residence was $650,000.[85] The Amended Complaint states Defendants failed to provide regular updates regarding the progress of the residence,

---

[82] Rec. Docs. 18, 30.

[83] See *Fagan*, 957 F.Supp.2d at 797 (citing *Nishimatsu Constr. Ltd.*, 515 F.2d at 1206).

[84] Rec. Doc. 23.

[85] Rec. Doc. 1-1.

refrained from working for months at a time on the construction of the residence, failed to purchase the required materials and supplies, and the contract was ultimately terminated by Plaintiffs due to the alleged lack of performance.[86]

In order to prevail on a breach of contract claim under Louisiana law, Plaintiffs must prove by a preponderance of the evidence that: (1) Defendants owed them an obligation; (2) Defendants failed to perform the obligation; and (3) Defendants' failure to perform resulted in damage to Plaintiffs.[87]

The Amended Complaint alleges Defendants breached the contract by failing to work as if time was of the essence, failing to purchase materials, and failing to complete the construction of the residence within the time provided, resulting in economic loss to Plaintiffs.[88] However, the underlying Building Agreement was entered into by Plaintiffs and CBA Home Builders, Inc. only.[89] Nelson signed the Building Agreement on behalf of CBA Home Builders, Inc.[90] Accepting the allegations as true, the Court finds that Plaintiff has sufficiently stated a claim against Defendant, CBA Home Builders, Inc. for breach of contract. However, Plaintiffs have not properly asserted a claim for breach of contract against Nelson because Nelson was not a party to the Building Agreement.

---

[86] Rec. Doc. 23.

[87] *Hayes Fund for the First United Methodist Church of Welsh, L.L.C. v. Kerr–McGee Rocky Mt., L.L.C.*, 14-2592 (La. 12/8/15), 193 So. 3d 1110, 1115.

[88] Rec. Doc. 23 at 6.

[89] Rec. Doc. 1-1.

[90] *Id.*

Plaintiffs seek to hold Nelson personally liable for the corporation's contractual obligations under a corporate veil-piercing theory.[91] Plaintiffs contend Nelson is the alter ego of CBA Home Builders, Inc. because its corporate and personal funds were commingled and the corporation's active status lapsed at some point during the duration of the contract.[92] Plaintiffs further contend that Nelson was negligent, that he intentionally deceived and misled them, and that Nelson acted in bad faith because he knew Plaintiffs relied on his statements and representations regarding construction of the residence, and he failed to exercise reasonable care and failed to keep Plaintiffs updated on the construction of the Residence.[93]

Corporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are generally not liable for the debts and obligations of the corporation.[94] Louisiana courts have recognized that veil piercing is an extraordinary remedy warranted only in exceptional circumstances.[95] The Louisiana Supreme Court applies five factors to determine whether to pierce the corporate veil: (1) commingling of corporate and shareholder funds, (2) failure to follow statutory formalities for incorporating and transacting corporate affairs, (3) undercapitalization, (4) failure to provide separate bank accounts and bookkeeping records, and (5) failure to hold regular shareholder and director meetings.[96] In addition, "the Court may

---

[91] Rec. Doc. 31-1 at at6–8.

[92] *Id.*

[93] *Id.*at 8.

[94] *Riggins v. Dixie Shoring Co.,* 590 So. 2d 1164, 1167 (La. 1991).

[95] *Bujol v. Entergy Servs., Inc.,* 03-0492 (La. 5/25/04), 922 So. 2d 1113, 1128, *adhered to on reh'g* (La. 1/19/06).

[96] *Riggins,* 590 So. 2d at 1167.

consider other factors as part of the totality of the circumstances if appropriate."[97] Moreover, "[W]here fraud or deceit is absent, other circumstances must be so strong as to clearly indicate that the corporation and shareholder operated as one."[98] "Piercing the veil under the alter ego theory usually requires evidence that 'fraud or deceit has been practiced by the [members] acting through the corporation.'"[99]

Plaintiffs contend that the Court should pierce the corporate veil under an alter ego theory because Nelson commingled personal and corporate funds and disregarded corporate formalities when his corporation's active status lapsed.[100] Furthermore, Plaintiffs argue that Nelson intentionally deceived and misled them and acted in bad faith because Nelson knew Plaintiffs relied on his statements and representations regarding construction of the residence, and he failed to exercise reasonable care and failed to keep Plaintiffs updated on the construction of the residence.[101] Plaintiffs further contend Nelson's work was substandard and incomplete, and Nelson failed to perform his contractual obligations.[102]

To support their theory of commingling corporate and shareholder funds, Plaintiffs rely on the payments for Change Orders to Defendants.[103] Plaintiffs contend Nelson regularly uses his

---

[97] *Sweeping Corp. of Am., LLC v. MDL Enters, LLC*, 23-7364, 2024 WL 5165177, at *5 (E.D. La. May 7, 2024) (citing *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 387 (5th Cir. 2000)).

[98] *Id.* (quoting *Hill Int'l, v. JTS Realty Corp.,* 2021-0157 (La. App. 1 Cir. 10/20/22), 370 So. 3d 16, 33).

[99] *Id.* (quoting *ORX Res., Inc. v. MBW Expl., LLC.*, 2009-0662 (La. App. 4 Cir. 2/10/10), 32 So. 3d 931, 935, *writ denied*, 2010-0530 (La. 5/7/10), 34 So. 3d 862).

[100] Rec. Doc. 31-1 at 6.

[101] *Id.* at 8.

[102] *Id.*

[103] *Id.* at 7–8.

personal Venmo account for business related items.[104] Plaintiffs further contend some Venmo payments for change orders were transmitted directly to Nelson personally.[105] Although this evidence does support an inference of some commingling of funds, Plaintiffs have not provided additional evidence regarding Nelson's "regular use" of his personal Venmo account for business related items. Considering Plaintiffs have shown only two Venmo payments transmitted to Nelson personally, the Venmo transactions demonstrate only limited commingling of funds.

Regarding the failure to follow statutory formalities for incorporating and transacting corporate affairs, Plaintiffs contend Defendants did not follow corporate formalities because the CBA Home Builders, Inc. was administratively terminated by the Louisiana Secretary of State.[106] Nevertheless, Plaintiffs acknowledge that CBA Home Builders, Inc. was reinstated less than two months later.[107] Accordingly, this factor provides limited support in Plaintiffs' argument of piercing the corporate veil.

Plaintiffs further argue that Defendants intentionally misled and deceived them regarding the construction of the residence because Plaintiffs relied upon Defendants representations, failed to provide updates, and delivered substandard and incomplete work.[108] Courts have recognized that "piercing the corporate veil under the alter ego theory usually requires evidence that 'fraud or deceit has been practiced by the [members] acting through the corporation.'"[109] Plaintiffs have not

---

[104] *Id.*

[105] *Id.*

[106] *Id.* at 7.

[107] *Id.*

[108] *Id.* at 8.

[109] *Sweeping Corp.,* 2024 WL 5165177, at *5 (quoting *ORX Res.,* 34 So. 3d at 935).

shown that Nelson used the corporation as an instrumentality to perpetuate fraud. Rather, the alleged misconduct is primarily centered on Nelson's failure to fulfill contractual obligations. Accordingly, this factor provides limited support for Plaintiffs piercing the corporate veil under the alter ego theory. Considering the undercapitalization factor, Plaintiffs have not presented evidence regarding undercapitalization, failure to maintain separate bank accounts, or failure to hold regular shareholder or director meetings. For these reasons, the Court finds that Plaintiffs have not established sufficient grounds to attach personal liability upon Nelson through piercing of the corporate veil under the alter ego theory.

The Court may dismiss a claim *sua sponte* if it concludes that the claim fails as a matter of law and gives the plaintiff notice of its intention and an opportunity to respond.[110] Accordingly, Plaintiffs are granted 14 days from the date of this Order to amend its claim against Nelson for breach of contract. If Plaintiffs cannot satisfactorily amend the complaint, the claim will be dismissed.

### *D. Relief*

#### **1. Damages**

Finally, having found that entry of default judgment is warranted on Plaintiffs' breach of contract claim against CBA Home Builders, Inc., the Court must further determine if it would be appropriate to award the remedies requested by Plaintiffs in the pending motion.[111] Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." While the relief available is restricted to what is

---

[110] *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021).

[111] *Fagan*, 957 F.Supp.2d. at 801.

requested in the pleadings, the Court must also determine if the requested relief is appropriate based on governing law.[112]

When a party seeks a default judgment for damages, the Fifth Circuit has held that "damages should not [be] awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts."[113] However, "where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary."[114]

Here, Plaintiffs have provided this Court with the contract at issue, receipts, and additional records to support the relief requested, specifically against CBA Home Builders, Inc. This evidence establishes the basis for the damages and relief specified in the request for default judgment, it is not necessary for this Court to hold a hearing.[115] Furthermore, as CBA Home Builders, Inc. has failed to take any action in this matter, it is unlikely that CBA Home Builders, Inc. would participate in an evidentiary hearing to determine damages. Therefore, a hearing would not be beneficial and as such is unnecessary.[116]

In the Complaint, Plaintiff seeks the following relief: (1) actual damages in the amount of $206,766.17, and (2) an award of attorneys' fees and costs in the amount of $10,821.[117] In the motion for default judgment, Plaintiffs requests that the Court award $206,766.17 for Defendants'

---

[112] *Id.*

[113] *Freeman*, 605 F.2d at 857.

[114] *Fagan*, 957 F. Supp. 2d at 802 (quoting *Columbia Pictures Indus*., 2006 WL 1851338, at *1).

[115] Rec. Doc. 31.

[116] *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (citing Fed. R. Civ. P. 55(b)).

[117] Rec. Doc. 31-3.

breach of contract, plus $10,821 in attorneys' fees and costs, and post-judgment interest at the legal rate provided by federal law.[118] Plaintiffs have established actual damages in the amount of $206,766.17, representing the amount owed for CBA Home Builders, Inc.'s breach of contract.[119]

**2. Attorney's Fees**

Plaintiffs request attorney's fees in the amount of $10,821.00. Pursuant to the underlying contract, the non-defaulting party is entitled to attorney's fees.[120]

To calculate reasonable attorney's fees, the Fifth Circuit uses the "lodestar" method, which involves multiplying the number of hours spent by a reasonable hourly rate for such work in the community to obtain a lodestar.[121] A court may then enhance or decrease the lodestar based on the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*[122] The lodestar may not be adjusted if the *Johnson* factors were considered in determining the original lodestar amount.[123]

---

[118] *Id.*

[119] Rec. Doc. 31-2.

[120] Rec. Doc. 1-1 at 3.

[121] *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).

[122] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Traditionally, courts have considered the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) when calculating attorney's fees. In *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 550–551 (2010), the Supreme Court noted that the *Johnson* factors were "[o]ne possible method" for determining reasonable attorney's fees, but that the factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." Since *Perdue*, however, the Fifth Circuit and the Eastern District of Louisiana have continued to weigh the *Johnson* factors when considering whether to decrease or enhance the lodestar in attorney's fee cases. *See, e.g., Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 n.17 (5th Cir. 2013); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012) (Wilkinson, M.J.). Accordingly, this Court does the same. *See Ahmed v. Bros. Food Mart, et al.*, No. 13-5948, Rec. Doc. 33 (E.D. La. Sept. 12, 2014) (Brown, J.).

[123] *Johnson*, 488 F.2d at 417–19. The *Johnson* factors are: (1) the time and labor required to litigate the matter; (2) the novelty and difficulty of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable;" (11) the type of

Plaintiffs attach a billing summary from their attorney, however, much of the pertinent information is redacted, including the billing rate and time expended on certain tasks. Further, in the motion for default judgment, Plaintiffs fail to provide information regarding the attorneys' reputation, years of experience, special skills, or the prevailing rates for similar attorneys in the Eastern District of Louisiana.

Therefore, the Court cannot determine whether the number of hours expended was reasonable. Moreover, Plaintiffs have not provided any information to the Court to demonstrate that the requested hourly rate is reasonable "in the community for such work."[124] As the Fifth Circuit held in *Louisiana Power & Light Company v. Kellstrom*, courts awarding attorneys' fees must determine both the reasonable number of hours expended on a matter and "the reasonable hourly rates for the participating lawyers."[125] The Fifth Circuit has instructed that courts should consider both the attorney's regular rate as well as the prevailing rates in the community for similar work to ensure the billing rate requested is reasonable.[126] Similarly, in *Blum v. Stenson*, the Supreme Court determined that "courts properly have required prevailing attorneys to justify the reasonableness of the requested rate" by placing the burden on the applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[127] As the Fifth Circuit has previously determined,

---

attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases.

[124] *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

[125] 50 F.3d 319, 324 (5th Cir. 1995).

[126] *Id.* at 328 (citing *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991)).

[127] 465 U.S. 886, 896 n.11 (1984).

"[t]he hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant market to set a reasonable hourly billing rate."[128] Thus, the Court cannot determine at this time whether the requested hourly rate is reasonable. Accordingly, the Court orders Plaintiffs' counsel to submit additional briefing regarding the hourly rate requested and the number of hours expended, so that the Court may consider this evidence in its evaluation of the reasonableness of the requested attorneys' fees.

Finally, 28 U.S.C. § 1961 provides: "Interest *shall* be allowed on any money judgment in a civil case recovered in a district court."[129] Accordingly, the Court also grants Plaintiff's request for interest on the amount of this judgment in accordance with 28 U.S.C. § 1961.

## IV. Conclusion

For the foregoing reasons, the Court finds that it has jurisdiction to enter a default judgment against CBA Home Builders, Inc. and that entry of a default judgment against CBA Home Builders, Inc. is appropriate. The Court further finds that taking all of Plaintiffs' well-pleaded facts as true, Plaintiffs have adequately demonstrated that they are entitled to default judgment on their claim for breach of contract against CBA Home Builders, Inc. The Court finds CBA Home Builders, Inc. liable to Plaintiffs in the amount of $206,766.17 in damages, plus interest on the amount of this judgment from the date of this judgment, pursuant to 28 U.S.C. § 1961. However, because of a lack of evidence submitted, the Court cannot determine at this time whether the hours expended or the hourly rate requested by Plaintiffs for Plaintiffs' counsel's work on this case is

[128] *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997) (citations omitted); *see also Cobb v. Miller*, 818 F.2d 1227, 1232 & n.7 (5th Cir. 1987) (noting that a magistrate judge should not have considered his personal experience in setting a reasonable hourly rate).

[129] *See* 28 U.S.C. § 1961(a) (emphasis added).

reasonable. Accordingly, the Court orders Plaintiffs' counsel to submit additional briefing regarding the hourly rate requested and the number of hours expended, so that the Court may consider this evidence in its evaluation of the reasonableness of the requested attorneys' fees.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment[130] is **GRANTED IN PART, DEFERRED IN PART** and **DENIED IN PART** as to Defendant CBA Home Builders, Inc. The motion is **GRANTED** to the extent it requests that a judgment be entered on Plaintiffs' breach of contract claim against CBA Home Builders, Inc. The request for attorneys' fees is **DEFERRED** pending further briefing on that issue. Plaintiffs' counsel must submit additional briefing regarding the attorneys' fees requested within 14 days of entry of this Order.

**IT IS FURTHER ORDERED** that the motion is **DENIED** insofar as Plaintiffs seek default judgment against Defendant Lionel Nelson. Plaintiffs are granted leave to amend its claim against Nelson within 14 days of this Order.

**NEW ORLEANS, LOUISIANA**, this 10th day of September, 2026.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

[130] Rec. Doc. 31.